# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

GREG SUMMERLIN,

                Petitioner,          :     Case No. 1:19-cv-77

    - vs -                       District Judge Timothy S. Black
                                  Magistrate Judge Michael R. Merz

BRANDESHAWN HARRIS, Warden,
 Trumbull Correctional Institution,

                             :
                Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Summerlin with the assistance of counsel, is before the Court for decision on the merits on the Amended Petition (ECF No. 8), the State Court Record (ECF No. 10), the Return of Writ (ECF No. 12), and Petitioner's Reply (ECF No. 13). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 15).

**Litigation History**

On October 2, 2014, a Hamilton County Grand Jury indicted Summerlin on one count of aggravated murder, one count of murder, two counts of aggravated robbery, one count of attempted aggravated murder and one count of attempted murder. (Indictment, State Court Record, ECF No. 10 Exhibit 1). A jury found Summerlin guilty on all the counts and specifications and he was ordered to

1

serve an aggregate sentence of life without parole, plus 14 years. (*Id.* Exhibit 6).  Summerlin appealed

and the convictions were affirmed.  *State v. Summerlin*, 2017-Ohio-7625(Ohio App. 1st Dist. Sep. 15,

2017), appellate jurisdiction declined, 2018-Ohio-365 (2018).

Through counsel Summerlin then filed his Petition in this Court, pleading, as set forth in

the Amended Petition, the following grounds for relief:

> **Ground One**: Petitioner's 6th and 14th amendment rights were violated by the trial court's failure to conduct a hearing and allow Petitioner to hire the attorney he requested.
>
> **Supporting Facts:** Petitioner was assigned court appointed counsel and expressed his dissatisfaction with the work performed. The relationship with court appointed counsel deteriorated and Petitioner requested the court allow him to hire the attorney of his choosing. The court failed to conduct a meaningful hearing on this motion and denied Petitioner his right to have the counsel he chose.

(Amended Petition, ECF No. 8, PageID 56)

> **Ground Two**: Petitioner's right to a fair trial and due process of law was violated by trial court's order limiting Petitioner's cross examination of state's witness.
>
> **Supporting Facts:**  The state introduced the hearsay testimony of an important witness regarding events relevant to this case.  The trial court refused to allow trial counsel to cross examine the state's witness regarding the declarant's criminal history. The trial court's decision deprived Petitioner of a fair trial.

*Id.* at PageID 58.

> **Ground Three**: Petitioner was denied the effective assistance of counsel.
>
> **Supporting Facts:**  During the trial of this matter, trial counsel failed to object and failed to properly protect the record. This prejudiced Petitioner's ability to defend himself against charges by the state. Trial counsel elicited damaging testimony regarding Pet[itioner's]. decision not to testify and failed to object to the trial court's prejudicial jury instructions and failed to object to damaging testimony from police officers and other witnesses.

*Id.* at PageID 59.

> **Ground Four**: Petitioner was deprived of his right to a fair trial and due process of law as a result of the trial court's erroenous [sic] jury instruction on flight.
>
> **Supporting Facts:** The trial court instructed the jury that the trial included evidence that the defendant fled from the scene of the crime and that the jury could consider this as consciousness of guilt. The court's instruction violated Petitioner's right to a fair trial and improperly shifted the burden for him to offer an explanation of his whereabouts.

*Id.* at PageID 61.

> **GROUND FIVE (labeled E)**: The state presented insufficient evidence as a matter of law to sustain the conviction.
>
> **GROUND SIX (labeled F)**: The trial court improperly admitted evidence denying Petitioner the right to a fair trial and due process of law.

*Id.* at PageID 68.

# Analysis

## Ground One:   Denial of Request to Change Counsel

In his First Ground for Relief, Petitioner claims the trial court denied him his right to change counsel.

The Amended Petition pleads this as a denial of the right to be represented by counsel of choice (ECF No. 8, PageID 56).   However, the Reply makes it clear, as Magistrate Judge Litkovitz found, that the dispute is about appointed counsel, not retained counsel (Order, ECF No. 14, PageID 1367, citing ECF No. 13, PageID 1349). This analysis proceeds with that understanding.

The Warden defends Ground One on the merits, arguing the First District's decision on this issue is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996

(Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(Return, ECF No. 12, PageID 1306).  This issue was Summerlin's First Assignment of Error on direct appeal which the First District decided as follows:

> [*P8]  Summerlin argues, in his first assignment of error, that the trial court erred when it denied his request for new counsel. On the first day of trial, with prospective jurors waiting outside the courtroom, Summerlin complained to the court that his two court-appointed attorneys had failed to share all the state's discovery with him.

> [*P9]  The decision whether to appoint substitute counsel rests within the sound discretion of the trial court. See *State v. Clark,* 1st Dist. Hamilton No. C-020550, 2003-Ohio-2669, ¶ 8. The trial court is required to make an inquiry into the defendant's complaint, including whether the motion was timely and whether there had been a complete breakdown in communication between the defendant and his counsel. See *id.* at ¶ 7; see also *State v. Murphy,* 91 Ohio St.3d 516, 2001-Ohio-112, 747 N.E.2d 765 (2001); *State v. Gordon,* 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 13 (1st Dist.).

> [*P10]  We note that 16 months before this challenged ruling, the court had entertained an identical oral motion from Summerlin. At that time, the court had carefully explained the limitation placed on Summerlin's counsel by Crim.R. 16(C) but nonetheless appointed new counsel to represent him.

> [*P11]  While the trial court's initial response had been perfunctory, when Summerlin renewed his motion, the court asked appointed defense counsel to respond. Summerlin's experienced trial counsel explained that he and co-counsel had provided Summerlin with all discovery material that had not been designated "counsel only" under Crim.R. 16(C). They had met with Summerlin 15 times before trial and had explained to him the limitations placed on them by the discovery rules. They had discussed at length their trial strategy and the plea negotiation. Counsel stated that he did not believe the attorney-client relationship had broken down. Summerlin also addressed the court, admitting that his counsel were experienced, but again requesting new counsel.

> [*P12]  We conclude that the trial court's decision to deny Summerlin's ill-timed, successive request for substitute counsel exhibited a sound reasoning process, and it will not be disturbed on

appeal. See *Clark*, 1st Dist. Hamilton No. C-020550, 2003-Ohio-2669, at ¶ 7; see also *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The first assignment of error is overruled.

*Summerlin, supra.*

Because the First District decided this issue on the merits, Summerlin's burden in habeas is to show that that decision was contrary to or an objectively unreasonable application of clearly established Supreme Court precedent or was based on findings of fact that were unreasonable in light of the evidence in the state court record.  28 U.S.C. § 2254(d)(1) and (2).

Summerlin agues that the standard for replacement of appointed counsel is set forth in *United States v. Iles*, 906 F.2d 1122 (6th Cir. 1990)(Reply, ECF No. 13, PageID 1352).  Much of that standard is set forth in footnote 8 which reads:

> In reviewing whether a district court abused its discretion in denying a defendant's motion to substitute counsel, appellate courts generally consider the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. See, e.g., *United States v. Gallop,* 838 F.2d 105, 108 (4th Cir. 1988); *United States v. Allen*, 789 F.2d at 92; *United States v. Whaley,* 788 F.2d 581, 583 (9th Cir. 1986); *United States v. Rogers*, 769 F.2d 1418, 1423 (9th Cir. 1985); cf. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). Further, "consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Wilson v. Mintzes,* 761 F.2d at 280 (footnote and citations omitted). Judicial review obviously necessitates that such an inquiry be based upon a motion, or something that approximates such a motion. As discussed below, not only did the defendant never make such a motion, personally or through counsel, but Iles never tried to "fire" his appointed counsel, never moved for a continuance to seek new counsel, and never sought to represent himself.

*Iles* itself was on direct appeal from a conviction in federal court where the standard of review is abuse of discretion; most of the authority relied on in *Iles* was also on direct appeal.  The standard

here is different. Our question is whether the First District's decision is an unreasonable application of Supreme Court precedent, not whether the trial judge in this case abused her discretion. In other words, we are not reviewing the denial of substitute counsel *de novo,* but with AEDPA deference.

In arguing this Ground for Relief, counsel quotes part of the colloquy between the trial judge and Summerlin in which the judge expresses her astonishment at Summerlin's request to change counsel on the morning of trial. In evaluating what happened, the context is important. Summerlin had been indicted on October 2014 and counsel was appointed for him at that time. On January 15, 2015, while still insisting on his rights under the Ohio speedy trial act, Summerlin asked the Court to replace his appointed counsel because they would not give him the portion of pretrial discovery that had been designated for counsel only (Transcript, State Court Record, ECF No. 10-1, PageID 198 et seq.) At that time the judge explained why the counsel-only discovery could not be provided, the quality of the attorneys already on the case, and the difficulty with a speedy trial if new counsel were appointed. Summerlin nevertheless insisted and new counsel were appointed.

On May 16, 2016, well over a year later, Summerlin was in open court to reject a plea offer and insist on going to trial. *Id.* at PageID 222 et seq. Judge Shanahan, who was to try the case, was presiding that day. Summerlin said nothing about any dissatisfaction with his attorneys. It was only on the very next day, May 17, 2016, with a jury waiting, that Summerlin again asked to change attorneys. Given that he had said nothing the day before, the judge's reaction (which Summerlin's counsel characterizes as mocking him), is understandable if unfortunate in tone.

After counsels' request for yet another continuance had been denied, defense counsel indicated Summerlin wanted to address the court (Transcript, ECF No. 10-4, PageID 234 et seq.).

Judge Shanahan asked what he wanted to say.  He replied "Get me some new attorneys" and she asked "why."  He responded that his counsel were not representing him because he had not seen the evidence.  His counsel represented to the court that they had met with him fifteen times and shown him everything they were allowed to show under Ohio R. Crim. 16 and were ready for trial. Judge Shanahan indicated to Summerlin that he had been appointed two very good lawyers and he responded again that he had not seen the restricted discovery.  After the judge denied the request for new counsel, Summerlin asked to be tried *in absentia*, which the judge also denied.

Summerlin cites no Supreme Court precedent requiring replacement of counsel in these circumstances, instead relying on *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970)(Reply, ECF No. 13, PageID 1353).

It is clear from the record that Summerlin's dissatisfaction with his attorneys was over a point on which they were legally obliged to deny his requests, to wit, disclosure to Summerlin of discovery provided on a counsel-only basis.  This is the same source of dissatisfaction he expressed with his prior counsel.  It is not a valid basis for changing attorneys; habeas counsel in no way suggests the trial attorneys were doing anything other than their duty in denying disclosure of this discovery to Summerlin.

Under *Iles, supra*, where the standard of review is abuse of discretion, the district court would consider the timeliness of the motion to substitute, the nature of the complaint the defendant has against counsel, and whether the conflict has become so great as to lead to a total lack of communication preventing an adequate defense.  The court must balance an accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. 906 F.2d at 1130, accord *United States v. Saldivar-Trujillo*, 380 F.3d 274 (6th Cir. 2004).  Here the motion was not timely:  a jury was waiting to try the case.  As late as the day before trial he was

7

in open court and could have made it then. Moreover, the basis of the motion was the same as Summerlin's unfounded complaint against his prior attorneys in January 2015.   The complaint was groundless:  no attorney could comply with Summerlin's request without risking a contempt finding or ethical discipline or both.  Summerlin himself had been insisting on a speedy trial – which at this point had been delayed more than eighteen months.

Even upon review for abuse of discretion, Summerlin would fail.  He certainly has not shown the First District's decision is an unreasonable application of Supreme Court precedent. His First Ground for Relief should therefore be denied on the merits.

## Ground Two:  Improper Limit on Cross Examination in Violation of the Confrontation Clause

In his Second Ground for Relief, Summerlin asserts the trial judge improperly limited his counsels' cross examination of a state's witness.  The State introduced the hearsay statements of Allen Grace through the testimony of the uncle of one of the victims.  The trial judge then prohibited Summerlin from impeaching Grace through cross-examination of the testifying witness about Grace's criminal record.

Summerlin raised this as his second assignment of error on direct appeal and the First District decided it as follows:

> [*P13]  Summerlin next challenges the trial court's decision denying him the opportunity to impeach Grace, a hearsay declarant, with evidence of his prior convictions. At trial, Burton's uncle testified, over objection, that Grace had told him Summerlin was present when Burton and Walker were shot. Grace did not testify at trial. After the uncle's direct examination, Summerlin asked to examine Grace's criminal record. He intended to use the criminal record, if any existed, to impeach Grace during the cross-examination of Burton's uncle.

[*P14] The state responded that Summerlin could not impeach Grace with his prior convictions without Grace being present at trial and on the witness stand as mandated in Evid.R. 609(F). That rule requires that a witness' record of conviction be shown to him during his examination. The trial court agreed and denied Summerlin's motion.

[*P15] But Evid.R. 806(A) provides that when a hearsay statement has been admitted into evidence, "the credibility of the declarant may be attacked * * * by any evidence that would be admissible for those purposes if declarant had testified as a witness." Under Evid.R. 806(C), a party may use Evid.R. 609 prior-conviction records to impeach a hearsay declarant even if that declarant does not testify. See *State v. Chambers*, 12th Dist. Butler No. CA2010-06-136, 2011-Ohio-1187, ¶ 24; see also *State v. Menton*, 7th Dist. Mahoning No. 07 MA 70, 2009-Ohio-4640, ¶ 113; *State v. Hatcher*, 108 Ohio App.3d 628, 632, 671 N.E.2d 572 (1st Dist.1996) (holding, before the addition of Evid.R. 806(C), that a hearsay declarant's criminal conviction could be admitted under Evid.R. 806 even though she did not testify). Thus the trial court's refusal to permit Summerlin access to Grace's record of prior convictions, if any existed, was error.

[*P16] Here, our record does not reveal whether Grace had any criminal record that could have been used for impeachment even if the trial court had followed Evid.R. 806. Evidence of Summerlin's guilt was overwhelming, and Grace's declaration was merely cumulative of other admissible evidence placing Summerlin at the scene of the shooting, including Walker's eyewitness testimony, phone records, and Summerlin's fingerprints on the discarded ammunition box. Walker testified at trial and was subject to cross-examination. Thus the trial court's erroneous ruling did not prejudice Summerlin. The second assignment of error is overruled.

*Summerlin, supra.*

Summerlin argues this claim in habeas under the Confrontation Clause as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny (Reply, ECF No. 13, PageID 1358 et seq.) However, this claim was not fairly presented to the First District as a constitutional claim. Instead, the second assignment of error on direct appeal was argued entirely in terms of Ohio evidence law (Appellant's Brief, State Court Record, ECF No. 10, PageID 119-20, citing only state-court precedent). Similarly, the First District did not decide this as a Confrontation Clause

claim, but rather as one arising under the Ohio Rules of Evidence.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

> Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)). "[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010) (en banc) (quoting *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002)).

*Allen v. Mitchell*, 953 F.3d 858 (6th Cir. 2020).

Because Ground Two was not fairly presented to the Ohio courts as a constitutional claim, it has been procedurally defaulted and should be dismissed on that basis.

**Ground Three:  Ineffective Assistance of Trial Counsel**

In his Third Ground for Relief, Summerlin argues he received ineffective assistance of trial counsel when his trial attorney (1) failed to object to the prosecutor's statements in closing, and (2) failed to object to statements admitted in violation of the Confrontation Clause (Reply, ECF No. 13, PageID 1354-57.

**Sub-claim One:  Failure to Object to Prosecutor's Comments in Closing**

At the beginning of closing argument, defense counsel told the jury:

> That burden [of proof] is completely on the State of Ohio. Mr. Summerlin, and all of us, when we're charged, have to do nothing. We have to prove nothing. It's on the State. And they haven't done it.
>
> Now, criminal trials can be frustrating for jurors because I was listening to your responses when we were discussing this at the beginning of the trial. And many of you said we would be fair jurors because we'll listen to both sides of the story.
>
> When a criminal trial, just like in this one, you don't get to hear both sides of the story. You only hear one.

(Transcript, State Court Record, ECF No. 10-9, PageID 1152).

When the prosecutor responded with his closing argument, he stated:

> For one thing, I think you will recall that he said in a trial you only get one side. Well, let me tell you.  That's not the law in Ohio. If there is one side here in this case, the State presented it. But no one prevents another side from being heard in a trial courtroom in the United States of America. No one.

*Id.* at PageID 1186.[1]

The Reply argues as if what the prosecutor said was a comment on the failure to Summerlin to testify which is improper and therefore objectionable. Summerlin claims the failure to make the objection was ineffective assistance of trial counsel. But on direct appeal, Summerlin argued his counsel was ineffective for making the comment about the jury's hearing only one side in the first place. The First District, applying the governing federal standard under *Strickland v. Washington,* 466 U.S. 668 (1984), held

> [*P19] Here, Summerlin's trial counsel worked diligently to discredit the state's theory of the case including effectively highlighting inconsistencies in the testimony of the state's witnesses. Counsel's inartful reference to Summerlin's failure to articulate his version of events, commented on by the state in its closing argument, was part of his larger contention that the state had failed to carry its heavy burden of proof. After reviewing counsel's brief comment, within the totality of the evidence before the jury, and more particularly within the context of the entire closing argument, we cannot say that but for that comment the result of the trial would have been different or that it was so unreliable that the judgment must be reversed.

*Summerlin, supra.* In sum, the First District was asked to evaluate defense counsel's comment and found it was inartful but consistent with the well-presented theme of the defense that the State had a heavy burden of proof and hadn't met it. That is certainly a reasonable construction of counsel's argument and the conclusion that it was not prejudicial is not an unreasonable application of *Strickland*.

Summerlin's claim here is different. It is not that his counsel commented on his failure to testify, but that his counsel failed to object when the prosecutor did so. On one level of analysis, this different claim is procedurally defaulted because it was not fairly presented to the state courts. In his appellate brief, Summerlin argued:

---

[1] This quotation is miscited in the Reply as coming from PageID 1046 which is a transcript of part of the testimony.

> First, during closing argument, defense counsel inexplicably told the jury that they only got to hear one side of the story. T, p. 1011. In this trial, Defendant-Appellant did not testify, and the defense did not present any evidence. On rebuttal, the State noted that there was nothing that prevented the jury from hearing both sides of the story. T, p. 1045. That comment from the State would normally be objectionable and potential grounds for a mistrial, but here defense counsel opened the door, The effect of the comment allowed the State to draw attention to the fact that Defendant-Appellant did not present a defense, and cannot be justified under any theory of trial strategy.

(Appellant's Brief, State Court Record, ECF No. 10, PageID 121.)  This is not the same claim as that made in habeas – that the prosecutor made an objectionable comment and it was ineffective assistance of trial counsel to fail to object.  In fact, the appellate brief confesses that defense counsel opened the door to the prosecutor's comment, making amy objection likely to fail.

If the procedural default is ignored and this sub-claim considered on the merits, it fails there as well.  As the record shows and Sumnmerlin admitted in arguing this assignment of error, the defense presented no evidence at all.  In those circumstances, the jury might have had the impression, which would have been strengthened by defense counsel's comments, that they were only **allowed** to hear one side of the story.  The prosecutor was full entitled to correct that impression by telling the jury that that is not the law.  The prosecutor made no direct comment at all on Summerlin's personal failure to testify.  Instead he commented, completely fairly, that the defense had the right to present evidence.  In fact, he does not even comment that the defense in fact presented no evidence, but merely rebuts any inference from defense counsel's comments that they somehow were not allowed to.

This first sub-claim of ineffective assistance of trial counsel is thus both procedurally defaulted and without merit.

**Sub-claim Two:  Failure to Make Confrontation Clause Objection**

In his second sub-claim of ineffective assistance of trial counsel, Summerlin argues his counsel provided ineffective assistance of trial counsel when he did not object on Confrontation Clause grounds to the trial court's admission of hearsay statements  by Allen Grace.  He asserts:

> The following information was obtained in this manner:
>
> 1.  Summerlin's nickname was Joker. (R. 10-8, Page ID# 1063.)
>
> 2.  Summerlin was at the scene of the shooting at the relevant date and time. (*Id*. at 1063-1064.)
>
> 3. Confirmation that a number [sic] of the state's theory that a number of other people were also present. (*Id*.)
>
> 4. Summerlin was correctly identified from a one photograph show-up. (*Id.* at 1066.)

(Reply, ECF No. 13, PageID 1356.)

The referenced testimony is during the direct examination of Cincinnati Police Officer David Gregory who testified about his interview with Allen Grace the day after the shooting. Gregory testified that Grace said he knew Summerlin well and by his street name, Joker, and that he recognized him from a photograph of Summerlin that Gregory showed him (Transcript, State Court Record, ECF No. 10-8, PageID 1063).  He was at the scene almost until the time of the shooting and identified Summerlin, Priest Huffaker, Wayne Walker (the victim who survived) and Wynton Burton (the deceased victim), as being present. *Id.* at PageID 1064.  He was willing to speak with Gregory but unwilling to testify. *Id.* Defense counsel made no objection to this testimony.

Summerlin now claims it was ineffective assistance of trial counsel not to object to this testimony as violating the Confrontation Clause.  Unlike the first sub-claim, this claim was

presented to the First District which decided it on the prejudice prong of *Strickland*:

> Moreover, Summerlin was not prejudiced by the detective's mention of Grace's statement, in light of Walker's trial testimony. After reviewing the entire record, we hold that Summerlin cannot demonstrate the requisite prejudice to establish his claim, because the record does not support a determination that but for these remarks or omissions, the result of the trial would have been different.

*Summerlin, supra*, at ¶ 19.

Summerlin first attacks this finding by noting that the First District did not analyze the deficient performance prong of *Strickland* (Reply, ECF No. 13, PageID 1357). However, it is proper in deciding an ineffective assistance of trial counsel claim to decide only the prejudice prong if it is dispositive. *Strickland,* 466 U.S. at 697.

As to the prejudice prong, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996), *citing Lockhart v. Fretwell*, 506 U.S. 364 (1993). "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow,* 977 F.2d 222 (6th Cir. 1992). Defects in assistance that have no probable effect on the trial's outcome do not establish a constitutional violation. *Mickens v. Taylor,* 535 U.S. 162, 166 (2002). "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

Summerlin's Reply does not suggest the First District's analysis was factually incorrect; indeed, he finds "devastation" in the fact that the surviving victim Walker corroborated what Grace had told Gregory (ECF No. 13, PageID 1357).

The Magistrate Judge concludes that the First District's conclusion on this point is entitled

15

to deference, particularly in light of what that court described as the weight of evidence of Summerlin's guilt and of Walker's identification of Summerlin as Burton's shooter at the scene of the crime. A state court's conclusion on an ineffective assistance of trial counsel claim is as entitled to AEDPA deference as any other state court conclusion. *Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

Summerlin's Third Ground for Relief should be dismissed.

**Ground Four: Improper Jury Instruction on Flight**

In his Fourth Ground for Relief, Summerlin complains that the trial judge's instruction that the jury could infer consciousness of guilt from his flight from the crime scene deprived him of due process and a fair trial because it "improperly shifted the burden [to Summerlin] to offer an explanation of his whereabouts."

Respondent asserts this claim as presented in habeas is procedurally defaulted because it was never fairly presented to the state courts (Return, ECF No. 12, PageID 1328). The Reply does not address this procedural default argument at all.

On direct appeal, Summerlin presented his jury instruction claim as his fourth assignment of error which the First District decided as follows:

> [*P20] In his fourth assignment of error, Summerlin contends that, over his timely objection, the trial court erred in instructing the jury on his flight from the scene of the shootings. He argues that the evidence did not show that he had taken affirmative steps to avoid detection. We disagree.

> [*P21] Evidence of flight is admissible to show consciousness of guilt. See *State v. Taylor*, 78 Ohio St.3d 15, 27, 1997-Ohio-243, 676 N.E.2d 82 (1997). An instruction on flight is proper if the record

contains sufficient evidence to support the charge. Flight means some escape or affirmative attempt to avoid apprehension including fleeing from the police or eyewitnesses. See *State v. Brundage,* 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 17. The instruction may not raise a presumption of guilt or shift the burden of proof to the defendant to explain his flight. See *State v. McKibbon,* 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041. The decision whether to instruct the jury on flight lies within the trial court's discretion. A reviewing court will not reverse that decision absent an abuse of that discretion. See *Brundage* at ¶ 18.

[*P22] Here, the state's evidence showed that Summerlin, knowing that the police would soon arrive, had immediately left the scene of the shootings even though Burton lay mortally wounded and Walker appeared to be seriously injured. Summerlin hid from police, removing himself from the city following the shootings. He made statements that he knew that he was "hot," acknowledging that the police were looking for him. The state also adduced evidence that Summerlin or his associates had offered Walker money not to testify. Moreover, the trial court instructed the jury that it could find an innocent explanation for Summerlin's flight.

[*P23] We conclude that the trial court acted within its discretion. Its decision to give the flight instruction was supported by the evidence adduced at trial and exhibited a sound reasoning process, and it will not be disturbed on appeal. See *Brundage* at ¶ 18; see also *AAAA Ents., Inc.,* 50 Ohio St.3d at 161, 553 N.E.2d 597. The fourth assignment of error is overruled.

*Summerlin, supra.*

The Magistrate Judge concludes this claim is not procedurally defaulted: the substance of the claim in state court and here is that the flight instruction should not have been given because the evidence did not support it. The First District's decision to the contrary settles that point as a matter of Ohio law. Summerlin invites us to decide to the contrary, citing *State v. Shepherd,* 2016-Ohio-931, (Ohio App. 8th Dist. March 10, 2016), for the propositions that "the state must prove more than a defendant's absence from the crime scene; [Rather the] state must demonstrate that the defendant took affirmative steps to avoid detection." Of course, the First District Court of Appeals is not bound precedentially by decisions from the Eighth District. However, the First

17

District relied on its own precedent for the same two points and found that the flight instruction actually given required the State to show Summerlin took active steps to avoid detection and could not shift the burden to explain absence to a defendant.

Summerlin argues as if this were a case under *Sandstrom v. Montana*, 442 U.S. 510 (1979), where the trial court gave an instruction which required the jury to reach a particular decision. Not so. The instruction complained of is as follows:

> Testimony has been admitted indicating that the defendant fled the scene. You are instructed that fleeing the scene alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness or awareness of guilt. If you find that the facts do not support that the defendant fled the scene, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.
>
> However, if you find that the facts support that the defendant engaged in such conduct, and if you decide that the defendant was motivated by consciousness or awareness of guilt, you may, but are not required, to consider that evidence.
>
> In deciding whether the defendant is guilty of the crimes charged, you alone will determine what weight, if any, to give to this evidence.

(Transcript, State Court Record, ECF No. 10-9, PageID 1210-11.) This instruction plainly disclaims creating or recognizing any irrebuttable presumption. The First District tells us that it is consistent with Ohio law and was properly given, based on the evidence presented.

Summerlin seeks to bootstrap his Ohio error claim into a due process claim by relying on *Hicks v. Oklahoma,* 447 U.S. 343 (1980), for the proposition that a State has a due process obligation to follow its own laws. Id. at 346. In *Hicks*, the Supreme Court held that a defendant's liberty interest in having a jury fix his sentence was not merely a matter of state procedural law but protected by the Due Process Clause of the Fourteenth Amendment where the provision of

Oklahoma's habitual offender statute under which the jury had been instructed to impose a particular sentence had later been declared unconstitutional by the same court that refused to reduce Hicks' sentence.  It does not stand for the general proposition for which Summerlin cites it.  Failure to abide by state law is not itself a constitutional violation.  *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976);  *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976).  "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

Summerlin acknowledges that jury instruction error rarely rises to the level of a constitutional violation (Reply, ECF No. 13, PageID 1360).  That is a correct statement of the law. *Engle v. Isaac*, 456 U.S. 107 (1982); *Turoso v. Cleveland Municipal Court*, 674 F.2d 486 (6th Cir. 1982); *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979); *Weston v. Rose,* 527 F.2d 524 (6th Cir. 1975). When the evidence presented does not support a requested jury instruction and that determination is based upon a state court's interpretation and application of state law, an asserted error relating to the jury instruction is not cognizable in federal habeas corpus unless the failure amounted to a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).

Petitioner's Fourth Ground for Relief is without merit.

**Ground Five:  Insufficient Evidence of Attempted Aggravated Murder**

In his Fifth Ground for Relief, Summerlin asserts there was insufficient evidence to convict him of the attempted aggravated murder of Walker.  The First District decided this claim as follows:

> [*P24]  Summerlin next argues that the evidence at trial was insufficient to convict him of the attempted aggravated murder of Walker as alleged in Count 5 of the indictment. Summerlin contends that, because there was no evidence that Walker had been robbed, the state had failed to establish an essential element of attempted aggravated murder. He argues, without citation to any authority, that he could not be convicted of the attempted aggravated murder of Walker because Walker had not been robbed.

> [*P25]  In Count 5, Summerlin was convicted of attempted aggravated murder under R.C. 2903.01(B) and 2923.02(A), which proscribe purposely engaging in conduct that if successful would have resulted in the aggravated murder of Wayne Walker while attempting to commit, or while fleeing immediately after attempting to commit, aggravated robbery. There is no limitation in the indictment that the robbery offense had to be committed against Walker.

> [*P26]  The aggravated-robbery charges against Summerlin, contained in Counts 3 and 4, were governed by R.C. 2911.01(A)(1) and 2911.01(A)(3). Under these statutes, the state was required to prove that Summerlin, in attempting or committing a theft offense against Burton, had a deadly weapon on or about his person, and had brandished or used that weapon, or had inflicted, or attempted to inflict serious physical harm on Burton.

> [*P27]  When reviewing the legal sufficiency of the evidence to support a criminal conviction, we must examine the evidence admitted at trial in the light most favorable to the prosecution and determine whether the evidence could have convinced any rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt. See *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 36; see also *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses, as

both are functions reserved for the trier of fact. See *State v. Campbell,* 195 Ohio App. 3d 9, 2011-Ohio-3458, 958 N.E.2d 622 (1st Dist.).

[*P28]  Throughout its case-in-chief, the state had argued that Summerlin was complicit with Huffaker in the attempt to kill Walker—an eyewitness to the aggravated robbery and murder of Burton. Under R.C. 2923.03(F), a complicitor may be prosecuted and punished as if he were a principal offender. See *State v. Corcoran,* 1st Dist. Hamilton No. C-160627, 2017-Ohio-7084, ¶ 29.

[*P29]  Here, the record reflects substantial, credible evidence from which the trier of fact could reasonably have concluded that all the elements of attempted aggravated murder had been proved beyond a reasonable doubt, including that Summerlein [sic] had participated in the theft, at gunpoint, of Burton's pistol and had ordered Huffaker to kill Walker to effect their escape. See *State v. Sanders*, 1st Dist. Hamilton Nos. C-140579 and C-140580, 2015-Ohio-5232, ¶ 40. The trier of fact could reasonably have found that Summerlin committed or was complicit in Huffaker's commission of the attempted aggravated murder of Walker and the aggravated robbery of Burton. See R.C. 2923.03(F); see also *Conway* at ¶ 36; *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796 (2001), syllabus. The fifth assignment of error is overruled.

*Summerlin, supra.*

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

21

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

       In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012).

The First District recited the correct legal standard from *Jackson v. Virginia*, 443 U.S. 307 (1979), but Summerlin argues they unreasonably applied it.  But it is difficult to discern what it is that Summerlin believes is missing.  On appeal he argued that, by the time Huffaker shot Walker, the robbery of Burton already completed (Appellant's Brief, State Court Record, ECF No. 10, PageID 124).  But the jury could reasonably have believed that Summerlin's reason for ordering Huffaker to kill Walker was to escape conviction for the robbery.  Petitioner makes no argument as to why that would not be sufficient.

The First District's decision on the sufficiency of the evidence on Count Five is not an unreasonable application of *Jackson v. Virginia, supra.*  Therefore Ground Five is without merit.

**Ground Six:  Improper Admission of Evidence**

In his Sixth Ground for Relief, Summerlin argues the trial court denied him a fair trial and due process of law by improperly admitting evidence.  The supposedly irrelevant evidence was two pictures from Summerlin's Facebook page, each of which showed him with a gun in his waistband and one of which showed him in the company of Priest Huffaker who was also armed (Reply, ECF No. 13, PageID 1364).

Petitioner raised this claim as his seventh assignment of error on direct appeal; the First District decided it as follows:

> [*P35]  In his seventh assignment of error, Summerlin claims that the trial court erred in admitting into evidence, over his objection, two prejudicial photographs taken from his Facebook profile page. See Evid.R. 403(A). One photo shows Summerlin with a gun in his waistband. The other shows Summerlin with Huffaker, each with a gun. The admission or exclusion of relevant evidence rests within

the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 31 Ohio B. 375, 510 N.E.2d 343 (1987), paragraph two of the syllabus; see *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.

 [*P36]  Here, the photos served to identify Summerlin as "Joker" and to demonstrate Summerlin's association with Huffaker. In light of Walker's trial testimony, the trial court's decision that the photographs' probative value was not substantially outweighed by the danger of unfair prejudice exhibited a sound reasoning process and will not be disturbed on appeal. See *Morris* at ¶ 14; see also *AAAA Ents., Inc.,* 50 Ohio St.3d at 161, 553 N.E.2d 597. The seventh assignment of error is overruled.

*Summerlin, supra.*

Summerlin essentially argues that these photographs are "other bad acts" evidence offered merely to besmirch his character, and claims "[t]he state offered no nexus between these photographs and the issues in this case." (Reply, ECF No. 13, PageID 1364). But the First District found a nexus:  identifying who "Joker" was and showing a connection between Summerlin and Huffaker, the man he ordered to shoot Walker.  Thus the evidence was relevant for a purpose other than attacking Summerlin's character.

Moreover, the Supreme Court of the United States has never held that admitting other bad acts evidence violates due process.  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).

Summerlin's Sixth Ground for relief is without merit and should be dimissed,

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 19, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.